## HARTFORD ACCIDENT & INDEMNITY CO. v. JACKSON.

### No. 11863.

Court of Civil Appeals of Texas. Galveston.

April 3, 1947.

Rehearing Denied April 24, 1947.

Andrews, Kurth, Campbell & Bradley, Richard F. Burns and Leon M. Payne, all of Houston, for appellant.

Helm & Jones, Shirley M. Helm and Albert P. Jones, all of Houston, for appellee.

CODY, Justice.

This is a workmen's compensation case, wherein the plaintiff was an employee of the Hughes Tool Company of Houston, and the defendant was the insurance carrier for said company. Plaintiff sued to recover compensation for permanent partial incapacity resulting from an injury received in the course of his employment on April 20, 1945. Claim for compensation was not filed with the Industrial Accident Board until December 15, 1945. Plaintiff pled that he had good cause for his failure to file his claim within the statutory period, and that such good cause existed up until the time the claim was filed. The principal contention made by appellant, who will hereinafter be called defendant, is that plaintiff failed to prove good cause for the failure to file the claim seasonably.

The trial was before a jury. At the conclusion of plaintiff's evidence, and again at

the conclusion of all the evidence, defendant moved for an instructed verdict. But the court submitted the case to the jury on special issues. And upon the answers to such special issues the court awarded plaintiff compensation of $9.90 per week for permanent partial disability for 300 weeks, beginning with December 1, 1945.

The special issues with which we are concerned on this appeal, as answered by the jury, are substantially as follows:

"Special issue No. 5: Plaintiff's partial disability began on December 1, 1945, following his injury on April 20, 1945. * * *

"Special issue No. 11: Plaintiff had good cause for failing to file a claim for compensation within six months after his injury.

"Special issue No. 12: That such good cause continued to exist until such claim was actually filed."

The points on which defendant predicates this appeal are:

I. The court erred in overruling defendant's motion for instructed verdict made at the conclusion of plaintiff's evidence, and at the conclusion of all the evidence.

II. The findings of the jury on the issues submitted on "good cause" are unsupported by any evidence.

III. The findings of the jury on the issues submitted on "good cause" are against the great weight and preponderance of the evidence.

IV. The finding of the jury on special issue No. 5 as to the date disability began is unsupported by any evidence.

### Opinion

■ As will hereafter appear, plaintiff sought by his evidence to bring his case within the rule stated in Texas Employers' Ins. Ass'n v. Clark, Tex.Civ.App., 23 S.W.2d 405, 408, as follows: "That the employee did not believe his injuries to be serious would clearly afford a good cause for not * * * filing [his] claim until it was learned that they were serious. Compensation is not provided for pain and suffering, but for loss of wages, and there would arise no necessity for * * * filing a claim so long as the employee lost no time from his work, but believed his injuries were trivial." See also Texas Employers' Ins. Ass'n v. Roberts, 135 Tex. 123, 130 S.W.2d 80.

■ It is well settled that "whether good cause exists for not filing a claim for compensation within six months * * * is ordinarily a question of fact. The burden is placed on the employee to allege and · prove this fact. * * * the burden is upon claimant to allege and prove the existence of such good cause up to the time of the filing of his claim, and not merely the existence of good cause during the first 6 months." Williamson v. Texas Indemnity Ins. Co., 127 Tex. 71, 90 S.W.2d 1088, 1089.

■ Where, as in this case, the jury has found the existence of "good cause" such finding is conclusive unless it could be said that no reasonable mind could, from the evidence, reach any other conclusion than that the plaintiff did not prosecute his claim for compensation with that degree of diligence which an ordinarily prudent person would have exercised under the same or similar circumstances. See Consolidated Underwriters v. Seale, Tex.Civ. App., 237 S.W. 642, 644, 645; Texas Employers' Ins. Ass'n. v. Roberts, supra.

■ In passing upon whether the evidence adduced by plaintiff made out a prima facie case of "good cause" it is to be borne in mind that plaintiff's direct evidence is to be taken as true, and every legitimate inference favorable to plaintiff that can be drawn therefrom must be indulged. The evidence adduced by plaintiff in support of "good cause" for not filing his claim prior to December 15, 1945, and to which defendant demurred as insufficient to support the jury's finding of "good cause" is, in substance, as follows:

That on the date plaintiff was injured, April 20, 1945, he was employed at the Hughes Tool Company's Aircraft Strut Company in Houston. In the course of such employment, on said date, plaintiff fell against a steel ladder and conveyor belt, and suffered his injury. That prior to such injury he was in good health, and nothing was wrong with him. When the injury occurred he was sent to the "first aid station" which was maintained by his employer at the plant in question. A nurse in

attendance there told him that he had received a bad bruise on the back, and it was going to take time to get it out. When plaintiff asked about having a doctor see him, the nurse told him it was not necessary for him to receive treatment from a doctor. Plaintiff was treated, and was told to return when he felt the need of relief. The treatments plaintiff received relieved him, and he thought he was improving. Plaintiff was also instructed how to have his wife make application of hot towels to his back, and how to apply an electric iron to his back. It was the practice of the "first aid station" always to send an employee to the company doctor if it was thought he was seriously injured.

That when the company's strut plant was closed in August, 1945, plaintiff was told his record was good, and was asked if he wished to be transferred to the company's "main plant", and he responded that he did. Plaintiff was then transferred to the "main plant" and was assigned to work in a machine shop, and put to work on a lathe. Plaintiff testified he got along satisfactorily at the "main plant", and got along good on the lathe. He testified that he took off some eight to twelve days in all due to the pain in his back, but that he did not give the pain in his back as an excuse to the company for taking such time off. He testified that he believed what the nurse had told him as to the triviality of his injury and "I relied on her, she being a graduate nurse." Also he testified, that from April 20, 1945, to December 15, 1945 (when he filed his claim for compensation), he had no reason be disbelieve the nurse's advice that he was going to recover. Shortly before he filed his claim, namely, on December 12, 1945, plaintiff consulted Dr. Bell of Houston, who advised him he would not recover. Plaintiff believed the doctor, and, as indicated, filed his claim promptly thereafter.

Plaintiff's evidence showed that he worked at the "main plant" until he was laid off on November 28, 1945 (at the time he was laid off he told the representative of his employer that "if you lay me off, you will pay me off."). Plaintiff's testimony on cross-examination reflected some shilly-shallying on his part in answering questions relating to the time after he had transferred to the "main plant". Such manner of testifying may have had a bearing on its credibility, and the weight which the jury should attach to it. But in passing upon whether the court should sustain a demurrer to plaintiff's evidence, as failing to make out a prima facie case of "good cause", the same must be taken as true. Defendant urges that plaintiff's testimony to the effect that from April 20, 1945, to December 15, 1945, he had no reason to disbelieve the nurse's advice that he was going to recover, was not evidence that he did in fact believe it. As against a demurrer to the evidence, the most favorable construction that such testimony will reasonably bear is to be indulged. And we hold that the jury could legitimately infer from such evidence that he did believe and rely upon the nurse's advice from April 20, 1945, to December 15, 1945.

Plaintiff's evidence showed, as stated above, that it was the duty of the nurse in attendance at the "first aid station" to determine whether an injury was serious enough to require the attention of a doctor. The failure of the nurse to send plaintiff to a doctor, and her advice to him that he did not need a doctor, was calculated to cause plaintiff to believe that if his injury was painful, it was not serious. The loss of time from work on account of his injury, totalling from eight to twelve days, would be insufficient to establish as a matter of law that plaintiff did not have "good cause" not to file his claim before he did.

■ It follows from what we have said that we overrule defendant's points I, II and III.

■ As stated above, plaintiff was laid off by the Hughes Tool Company on November 28, 1945. The evidence is undisputed that he worked until approximately December 1, 1945. The doctor found on December 12, 1945, that he was permanently partially disabled. Plaintiff's evidence of his inability after he was laid off by Hughes Tool Company to thereafter hold such jobs as he had theretofore held, sufficiently supports the jury's finding in answer to special issue No. 5. We overrule point IV.

The judgment is affirmed.