**AMERICAN GENERAL INSURANCE COMPANY, Appellant,**

v.

**E. L. QUINN, Appellee.**

No. 6795.

Court of Civil Appeals of Texas.

Texarkana.

March 10, 1955.

Rehearing Denied April 7, 1955.

224

Collins, Garrison, Renfrow & Zeleskey, Lufkin, Aubrey Robison, Daingerfield, for appellant.

Jones, Brian & Jones, C. A. Brian, Marshall, Howard S. Smith, Sulphur Springs, Boyet Stevens, Daingerfield, for appellee.

DAVIS, Justice.

Appellee-plaintiff recovered judgment in the trial court for total and permanent disability benefits under the Texas Workmen's Compensation Law based upon a special issue jury verdict. The injury complained of was a ruptured disc. The evidence is sufficient to support the verdict.

Appellant assigns 23 points of error. They were grouped into three groups in its brief and will be disposed of accordingly.

By points 1, 2, 3 and 4, appellant complains of the action of the trial court in refusing to permit appellant to prove and the jury to consider testimony relative to the effect of an operation upon appellee's future incapacity. Appellant contends that it was entitled to these privileges under the provisions of section 12e of Article

8306. It cites no authority in support of this contention. It further contends that the decisions under section 12b, the hernia statute, of Article 8306 should not apply because section 12b provides that " * * * the association shall provide competent surgical treatment * * *" and section 12e provides that " * * * the association or the employé may demand that a surgical operation be had * * *." It argues that: "Obviously, the legislature recognized the relative certainty of a hernia diagnosis by the medical profession and the difficulty of the diagnosis of other conditions, such as a ruptured disc, consequently, it established different criteria in each instance." With this contention we do not agree. The last sentence of section 12e reads as follows: "The results of such operation, the question as to whether the injured employé shall be required to submit thereto and the benefits and liabilities arising therefrom shall attach, be treated, handled and determined by the board in the same way as is provided in the case of hernia in this law." Therefore, we hold that the two sections, 12b and 12e, must be construed together. In doing so, we find that under said sections of said article that the following steps are mandatory before a compensation carrier would be entitled to make such proof: (1) Admit liability; (2) tender the operation to the employee while the claim is pending before the Board; (3) if the employee refuses the operation, make a demand to the Board to require the examination, or examinations, required by the law; and (4) show that the examination or examinations were had and the action of the Board thereon. Having complied with the requirements of the statutes, the insurer would then be entitled to appeal from any refusal of the employee and any adverse ruling by the Board and to re-try any issue decided adversely to it by the Board and would certainly be entitled to prove the benefits of an operation in the event the employee refused the same. The Workmen's Compensation Law is a special law, wholly and completely foreign to the common law. Both the insurer and the insured forfeit many rights, and acquire some special benefits by virtue of such law. The statutes must be strictly construed according to the legislative intent. In doing so, both lose certain rights and benefits afforded by the common law.

Appellant did not comply with any of the foregoing requirements of the special statute, but steadfastly denied liability throughout the entire period. Therefore, it was not entitled to plead nor prove the possible benefits of a surgical operation. National Mutual Casualty Co. v. Lowery, Tex.Com.App., 136 Tex. 188, 148 S.W.2d 1089, affirming, Tex.Civ.App., 135 S.W.2d 1044; Texas Employers' Ins. Ass'n v. Neatherlin, Tex.Com.App., 48 S.W.2d 967, affirming, Tex.Civ.App., 31 S.W.2d 673; Federal Underwriters Exchange v. Thompson, 136 Tex. 194, 148 S.W.2d 1092, affirming, Tex.Civ.App., 137 S.W.2d 106; Lewis v. American Surety Co., 143 Tex. 286, 184 S.W.2d 137, reversing, Tex.Civ.App., 180 S.W.2d 988; Texas Employers Ins. Ass'n v. Tally, 132 Tex. 547, 125 S.W.2d 544; Hartford Accident & Indemnity Co. v. Black, 5 Cir., 193 F.2d 971; and Roberts v. National Surety Corp., 5 Cir., 208 F.2d 642. Points 1, 2, 3 and 4 are overruled.

By points 5 through 13, and points 16 and 17, appellant complains of the action of the trial court in submitting special issues 11, 12 and 13 to the jury and in rendering judgment thereon, because, appellant contends: (1) There was no evidence to support the submission of such issues, nor to support the jury's verdict thereon; (2) from a preponderance of the evidence, a reasonably prudent person would not, for the reasons proved, have delayed the filing of his claim with the Board for more than six months; (3) that the jury's verdict in support of said issues is so contrary to and against the overwhelming weight and preponderance of the evidence to be manifestly unjust and unfair, and demonstrating that the jury was actuated by some improper motive in answering such issues; and (4) that appellee failed to prove that a good cause existed for the late filing of his claim with the Board until the claim was actually filed.

The evidence shows that appellee was injured in the course of his employment about 9 o'clock, A.M., on September 30, 1952, while working for Brown & Root Construction Company at Lone Star Steel Company in Morris County. Shortly after his injury, he was carried to the company hospital by a fellow employee. He remained in the hospital over night where he was seen and treated by Dr. Phillips, the company's doctor, and was discharged the next afternoon about four o'clock, and was told he could return to light work. He went to his home in Pittsburg and that afternoon or night he had to call his family physician, Dr. Johnson, because the pain became so severe. He returned to his job either the next day or the second day after he was discharged from the hospital and was put on light work where he continued to work almost regularly until about a week or ten days before he left his job for *the same employer*. About a week or ten days before he left the job, he was put back on heavy duty, could not do the work, and left the job on April 12, 1953. He then went to Dumas, Texas, where he "thought his daddy-in-law was" and planned to stay with him until he was able to return to work. Not finding his daddy-in-law in Dumas, he was compelled to work two days to get enough money to return home. Upon his return to Pittsburg, he went to the hospital and was placed there in traction for about five days. Upon being discharged from the hospital, he went to the "insurance man" and talked to him about his claim. He testified that the "insurance man" told him that he, the "insurance man", said he *would file appellee's* claim for him and he would draw compensation. About two weeks later, he went back to the "insurance man", but failed to get any favorable response. On April 30, 1953, Quinn signed a notice of injury and claim for compensation. A photostatic copy of the notice and claim was introduced in evidence, "including the file date therein," without any objection from the appellant except "that they can't be considered as the truth of the matters stated by Mr. Quinn, but as to those upon which this suit is filed." The court reporter failed to copy the file

date of the exhibits in the statement of facts, but appellant admits that they were filed shortly thereafter.

Appellee testified that he was treated by Dr. Phillips on numerous occasions from September 30, 1952, until he left the job April 12, 1953. That Dr. Phillips told him that his injury was minor or trivial and that he would get well. That he believed and relied upon those statements and continued to work as best he could; although he was never completely without pain from the time of his injury up until and at the trial of his case.

Dr. Phillips denied that he told Quinn that the injuries were minor or trivial, but said he did tell him they would not be permanent. He further testified that he only treated Quinn one time for the injury. But he did send Quinn to Dr. Barker at Longview, Texas, in February, 1953. Further evidence in the case does not support Dr. Phillips' testimony, and the jury was justified in disbelieving or disregarding at least part of his testimony.

The evidence shows that Quinn was treated by Dr. Johnson of Pittsburg on numerous occasions. Dr. Johnson testified that he called someone and got permission to treat Quinn as a company patient. He further testified that he never at any time considered Quinn's injury as serious; although he had observed Quinn on many occasions when Quinn did not know he was watching him and knew that Quinn was walking in a "creaning position" and showed signs of a more serious injury than he, Dr. Johnson, thought Quinn actually had. Dr. Johnson had made X-rays and was unable, even until his deposition was taken, to see any serious injury to Quinn. Quinn testified that Dr. Johnson had told him on many occasions that his injury was not serious and that he believed and relied upon what Dr. Johnson told him. Dr. Johnson did not remember telling him that, but would not deny it in view of his opinion about it all the time.

Quinn testified that he believed his injuries to be only minor or trivial from the

time of his injury until he was examined by Dr. C. C. Nash in Dallas some three or four weeks after he signed his notice of injury and claim for compensation in his attorney's office on April 30, 1953.

Certainly Quinn was entitled to believe in and rely upon what the doctors told him not only by word of mouth, but by their actions in continuously sending him back to work. It should shock the conscience of every member of the medical profession to know it had members that would deliberately and maliciously misrepresent facts to injured persons to defraud them of their just dues. The appellant was justified and forcefully claims that justification in not paying compensation from the very beginning. Where did they get that justification, based on good faith? From the same doctors that Quinn placed his faith in during the same period of time.

Dr. DeCharles, witness for appellee, and a specialist, testified as to the extent and seriousness of Quinn's injuries, and in his present condition he was totally and permanently disabled. His testimony was corroborated in part by Dr. Barker, another specialist, and a witness for appellant.

■ We think the pleadings and the evidence were sufficient to support the submission of the issues 11, 12 and 13, and the jury's verdict thereon, and clearly show that Quinn had good cause for not filing his notice and claim from the date of his injury until and including the date it was filed. The questions were certainly of fact and not of law. Texas Employers Ins. Ass'n v. Clark, Tex.Civ.App., 23 S.W.2d 405, err. dis.; Hawkins v. Safety Casualty Co., 146 Tex. 381, 207 S.W.2d 370, 373; Texas Employers Ins. Ass'n v. Fowler, Tex. Civ.App., 140 S.W.2d 545, err. ref.; Aetna Casualty & Surety Co. v. Rhine, 5 Cir., 152 F.2d 368, 371; Texas Employers Ins. Ass'n v. Roberts, 135 Tex. 123, 139 S.W.2d 80; Martin v. Travelers Ins. Co., Tex.Civ.App., 196 S.W.2d 544, no writ history; Federal Underwriters Exchange v. McDaniel, Tex. Civ.App., 140 S.W.2d 979, err. dis., correct judgment; and Hartford Accident & Indemnity Co. v. Jackson, Tex.Civ.App., 201 S.W.2d 265, err. ref., n.r.e. Points 5 through 13, and 16 and 17 are overruled.

■ In points 14 and 15 appellant complains of the action of the trial court in permitting Quinn to testify that after Dr. Nash had examined him and from what Dr. Nash told him, he did then arrive at the conclusion that he was more seriously hurt than he previously thought. The points do not set out in what respect the court erred, but appellant argues that such testimony was hearsay. It was objected to only because it was hearsay. We think the testimony was admissible as original testimony of a fact for the purpose for which it was offered: To show when Quinn first learned that his injury was serious and not just minor or trivial. An objection and motion to limit the testimony to that extent should have been sustained, but none was made. Texas Employers Ins. Ass'n v. Little, Tex.Civ. App., 96 S.W.2d 677, err. dis.; Traders & General Ins. Co. v. Jaques, Tex.Civ.App., 131 S.W.2d 133, err. dis., judgment correct; and Texas Employers Ins. Ass'n v. Fowler, C.C.A., supra, error ref. In addition to the foregoing conclusions, as we view the record as a whole, we do not believe the matters complained of reflect reversible error. Points 14 and 15 are overruled.

■ In points 18 through 23, appellant complains of certain remarks of counsel for appellee in his closing argument to the jury, and alleges that such remarks informed the jury of the effect of their answers to special issues Nos. 11, 12 and 13. No objection was made to the argument at the time and the error, if any, was assigned for the first time in their motion for a new trial. We have carefully examined the remarks complained of and do not find any error that could not have been cured by an objection and motion not to consider the same. Having failed to object to such remarks at the time they were made, the error was waived. Wade v. Texas Employers Ins. Ass'n, 150 Tex. 557, 244 S.W.2d 197; Phoenix Ref. Co. v. Morgan, Tex.Civ.App., 178 S.W.2d 175, ref., n.r.e.; Collett v. Collett, Tex.Civ.

App., 217 S.W.2d 60, ref., n.r.e.; Fisher v. Leach, Tex.Civ.App., 221 S.W.2d 384, ref., n.r.e.; and Van v. Webb, Tex.Civ.App., 237 S.W.2d 827, ref., n.r.e. Points 18 through 23 are overruled.

Finding no error in the record, the judgment of the trial court is affirmed.